UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
____

AARON KIMBER,

        Plaintiff,

v.

NORMA KILLOUGH et al.,

        Defendants.
_____/

Case No. 2:24-cv-81

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff's leave to proceed *in forma pauperis* in this action. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Killough. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's equal protection and due process claims against Defendants Storey, Schopp, Miilu, and Jones. Plaintiff's First Amendment claims against Defendants Storey, Schopp, Miilu, and Jones remain in the case.

**Discussion**

**I.   Factual Allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Norma Killough[1], Temporary Warden Barbra Storey, Business Manager Craig Schopp, Prison Counselor Unknown Miilu, and Mailroom Staff Sharon Jones.

In his complaint, Plaintiff alleges that on May 25, 2023, he ordered twenty-five YKTV adult magazines from the publisher as outlined in Policy Directive 05.03.118. (ECF No. 1, PageID.2.) Plaintiff states that he received eighteen of the twenty-five magazines. On reordering 17 more magazines, Plaintiff received a rejection from Defendant Jones, stating that they were a threat to the order of the facility. (*Id.*) Plaintiff asserts that neither Defendant Jones nor Defendant Storey could provide valid paperwork to show that the magazines were not allowed. In addition, Defendant Schopp, who is in charge of the mailroom, could not show anything saying that the magazines are restricted. (*Id.*)

Plaintiff received a hearing during which Defendant Miilu stated that YKTV magazine has a "re-shipping policy which could allow contraband into the facility." (*Id.*, PageID.3.) Plaintiff contends that Defendants told him that the rejection was based on an email and could not provide a memorandum in support of the rejection. (*Id.*) Plaintiff asserts that the stated reason for the rejection cannot be true because YKTV publications are not included on the restricted publications

---

[1] Plaintiff claims that Defendant Killough is the CFA Director, however, the CFA is headed by the Deputy Director Jeremy Bush, who has been in the position since October 6, 2020. *See* https://www.michigan.gov/corrections/about/deputy-directors/jeremy-bush-correctional-facilities-administration.

list nor is there any memorandum saying the books are restricted. In addition, Plaintiff asserts that this reason is not plausible because he was allowed to receive eighteen out of twenty-five of the magazines he ordered from YKTV. (*Id.*) Plaintiff notes that the former warden had approved the magazines ordered by Plaintiff in July of 2022. (*Id.*)

Plaintiff filed a grievance on July 6, 2023, that was rejected by the grievance coordinator. (*Id.*) Plaintiff appealed to Defendant Storey, who upheld the restriction. (*Id.*; ECF No. 1-1, PageID.12.)

Plaintiff references MDOC Policy Directive 05.03.118, which governs prisoner mail, throughout his complaint. Pursuant to the policy, prisoners are permitted to receive books, magazines, and other publications if they are: (1) "[o]rdered by a member of the public from an internet vendor identified in Attachment A or from the publisher and sent directly to the prisoner by the vendor or publisher"; or (2) "[o]rdered by the prisoner from a vendor identified in Attachment B or from the publisher and sent directly to the prisoner from the vendor or the publisher." MDOC Policy Directive 05.03.118 ¶ AA (1), (2) (eff. Nov. 6, 2023). Prisoners' orders "must be through established facility ordering procedures." *Id.*

Inmates are also prohibited "from receiving mail that may pose a threat to the security, good order, or discipline of the facility, facilitate or encourage criminal activity, or interfere with the rehabilitation of the prisoner. *Id.*, ¶ PP. Mail depicting acts of bondage are not permitted. *Id.*, ¶ NN(5). Moreover, nude photographs are not permitted "except if included in a publication sent directly from the publisher or an authorized vendor." *Id.*, ¶ NN(12). Furthermore, photographs "depicting actual or simulated sexual acts by one or more persons" are prohibited. *Id.*, ¶ NN(13). Publications that are not received directly from publishers or approved vendors are also prohibited. *Id.*, ¶ NN(8).

3

The policy provides further that when mail is believed to violate policy, a Notice of Package/Mail Rejection must be prepared and sent to the prisoner. *Id.*, ¶ ZZ. The notice "shall identify the specific item believed to be in violation of this policy and why the item is believed to be in violation of policy." *Id.* An administrative hearing must be conducted unless the "prisoner waives his/her right to a hearing in writing by choosing an allowable disposition for the item." *Id.*, ¶ AAA. If the hearings officer determines that the mail does not violate this policy, "the mail shall be returned to the mailroom to determine if any other violations of policy exist." *Id.* ¶ CCC. "If there is no other reason to reject the mail pursuant to this policy, the mail shall be promptly delivered to the prisoner unless it is determined by the Warden or designee that the hearings officer's decision was not supported by policy and a rehearing is ordered." *Id.*

If a hearings officer determines that a publication violates the policy "based on its written or pictorial content, the publication shall be submitted in a timely manner to the Warden along with a copy of the Notice and the Administrative Hearing Report." *Id.*, ¶ EEE. If the Warden agrees that the publication violates policy based upon its written content, he or she shall proceed as set forth below. *Id.* "In all other cases involving the pictorial content of a publication, the Warden shall make the final decision. The Warden may maintain a list of publications rejected under his/her authority due to pictorial content." *Id.*

If the Warden concurs with the hearings officer's decision that a publication violates policy based upon written content, the Warden or designee "shall promptly submit copies of the Notice, the Administrative Hearing Report, the publication's cover, and a representative sampling of the specific sections of the publication found to be in violation of this policy to the CFA Deputy Director or designee for a final determination whether the publication violates this policy." *Id.*,

4

¶ FFF. If the CFA Deputy Director or designee agrees that a publication violates policy, it is placed on the Restricted Publications List. *Id.*, ¶ GGG.

An inmate who disagrees with the outcome of a hearing may file a grievance. MDOC Policy Directive 05.03.118, ¶ JJJ. The inmate may also appeal the proposed rejection within ten business days after the date of the notice of rejection by sending a letter to the Warden. *Id.*, ¶ KKK. If the publication at issue was rejected because it was already on the Restricted Publication's List, the appeal "shall be forwarded to the CFA Deputy Director or designee through the appropriate chain of command for review." *Id.*

Plaintiff states that the rejection of these publications violates his rights under the First and Fourteenth Amendments. Plaintiff also complains that Defendants allow publications from "[non] publishers," such as Amazon, but discriminate against YKTV, which constitutes unequal treatment. (*Id.*, PageID.4.)

Plaintiff seeks compensatory and punitive damages.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility

5

standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Fourteenth Amendment Due Process Claims

Plaintiff alleges violations of his Fourteenth Amendment due process rights. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

It is well established that Plaintiff has a liberty interest in receiving his mail. *See Stanley v. Vining*, 602 F.3d 767, 769 (6th Cir. 2010) (citing *Procunier v. Martinez*, 416 U.S. 396, 428 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989)).[2] The Sixth Circuit has held that an incoming mail censorship regulation must provide "that notice of rejection be given to the inmate-recipient" and that the inmate-recipient be given the opportunity to challenge the rejection. *Martin v. Kelley*, 803 F.2d 236, 243–44 (6th Cir. 1986). The regulation "must also provide for an appeal of the rejection decision to an impartial third party." *Id.* at 244.

It is clear from Plaintiff's complaint that he received the process to which he was due. Plaintiff alleges that he received notice of the mail rejections. Plaintiff states that he received a hearing before Defendant Miilu where he had opportunity to challenge the rejection of his

---

[2] The focus of Plaintiff's due process claim is his liberty interest. Nonetheless, alternatively, Plaintiff might claim a property interest in his rejected mail. That claim would also be properly dismissed. Plaintiff's due process claim would be barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). . . . . Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee—such as an improper rejection of mail—has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. . . . . If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." ." *Parratt*, 451 U.S. at 537. Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. . . . . *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). . . . . Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action. . . . . *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. . . . . Plaintiff has not alleged that state post-deprivation remedies are inadequate. . . . . Moreover, state post-deprivation remedies are available to him. . . . . Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments or officers." ." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). . . . . The Sixth Circuit has held that Michigan provides adequate post-deprivation remedies for deprivation of property. . . . . *See Copeland*, 57 F.3d at 480. . . . . Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. . . . . Accordingly, a claim that Plaintiff was deprived of his property without due process of law would be properly dismissed as well.

7

magazines. During the hearing, Defendant Miilu explained that YKTV publishing has a "re-shipping policy which could allow contraband into the facility. (ECF No. 1., PageID.3.) MDOC Policy Directive 05.03.118 also allows for appeal of the decision, which Plaintiff took advantage of by filing a grievance, as well as an appeal to Defendant Storey. Because Plaintiff received the process to which he was due, his Fourteenth Amendment due process claims will be dismissed.

### B. First Amendment Claims

Plaintiff also contends that the rejection of his incoming magazines violated his First Amendment rights. A prisoner's right to receive mail is protected by the First Amendment." *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992) (citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)). "Mail is one medium of free speech, and the right to send and receive mail exists under the First Amendment." *Al-Amin v. Smith*, 511 F.3d 1317, 1333 (11th Cir. 2008) (citing *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 427 (1993) ("[T]he use of the mails is as much a part of free speech as the right to use our tongues.") (internal quotes omitted)). A prisoner, however, retains only those First Amendment freedoms which are "not inconsistent with his status as a prisoner or with legitimate penological objectives of the corrections system []." *Martin*, 803 F.2d at 240 n.7 (*quoting Pell*, 417 U.S. 817, 822 (1974); *see also Turner v. Safley*, 482 U.S. 78 (1987). Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner*, 482 U.S. at 78. And the possibility that incoming mail might introduce contraband into the prison is so obvious that courts have routinely upheld the right of prison officials to inspect incoming mail for contraband despite First Amendment free speech protection. *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 574–76 (1974).

Given Plaintiff's allegations, the Court concludes that he has set forth a plausible First Amendment claim against Defendants Jones, Schopp, and Miilu. As noted above, Defendant Jones and Defendant Schopp played some role in rejecting the magazines. Plaintiff also alleges that Defendant Miilu is the hearings officer who upheld the rejection of the magazines.

Plaintiff suggests that Defendants Killough is the CFA Director and is involved in the decision that the magazines were not to be allowed in the facility. As set forth above, the CFA Deputy Director, who is currently Defendant Bush, has the ultimate say as to whether a publication violates policy. *See* MDOC Policy Directive 05.03.118, ¶ FFF. Moreover, Defendant Storey, who was acting Warden of the facility during the pertinent time period, makes the final decision regarding pictorial content of publications. *Id.*, ¶ EEE. The policy and Plaintiff's allegations support an inference that CFA Deputy Director Bush and Defendant Storey made the final decision regarding the magazines. Accordingly, while the Court will dismiss Plaintiff's First Amendment claim against Defendant Killough, Plaintiff's First Amendment claim against Defendants Storey, Jones, Schopp, and Miilu may proceed.

C. **Equal Protection**

Plaintiff claims that approved vendors such as Amazon are treated differently from YKTV. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. . . . . U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). . . . .

Plaintiff claims there is disparate treatment here, but he does not claim he was discriminated against. Instead he claims that Defendants are discriminating against YKTV by treating YKTV differently than they treat Amazon. . . . . (Compl., ECF No. 1, PageID.4.) Plaintiff

9

appears here pro se. He is permitted to do so under 28 U.S.C. § 1654, which provides that "[i]n all courts of the United States the parties may plead and conduct their own cases personally or by counsel . . . ." *Id*. "[T]hat statute does not permit plaintiffs to appear pro se where interests other than their own are at stake. Shepherd v. Wellman, 313 F.3d 963, 970 (6th Cir. 2002). Therefore, Plaintiff has no right to raise a claim of discrimination on behalf of YKTV. Therefore, Plaintiff's equal protection claim will be dismissed.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendant Killough will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: Plaintiff's equal protection and due process claims against Defendants Storey, Schopp, Miilu, and Jones. Plaintiff's First Amendment claims against Defendants Storey, Schopp, Miilu, and Jones remain in the case.

An order consistent with this opinion will be entered.

Dated:  June 20, 2024                              /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge